260 N.J. Super. 12 (1992)
614 A.2d 1360
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ALVAE MOORE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1992.
Decided October 30, 1992.
*13 Judges KING, BRODY and LANDAU.
William T. Donegan, Assistant Prosecutor argued the cause for appellant (Andrew K. Ruotolo, Jr., Prosecutor of Union County, attorney; William T. Donegan, Criminal Justice Specialist, on the letter brief).
Jacqueline E. Turner, Asst. Deputy Public Defender, argued the cause for respondent (Zulima V. Farber, Public Defender of New Jersey, attorney; Jacqueline Turner, on the letter brief).
The opinion of the court was delivered by KING, P.J.A.D.
The State appeals, by leave granted, R. 2:2-3(b), from an order suppressing evidence secured as a result of defendant's arrest on a bench warrant issued for failure to appear in municipal court. After making the arrest and search, the police discovered that defendant had posted bail on the bench warrant *14 and been released from jail 42 days before her arrest. She then had pled guilty to the underlying charge and the bench warrant had been judicially marked "vacated" 27 days before her arrest. The police records had never been corrected to show that the bench warrant was no longer outstanding at the time of arrest.
While the officer who made the arrest no doubt did so blamelessly and in good faith reliance on the records available to him at police headquarters, the arrest was without legal authority. We agree that the evidence seized in the course of this good faith but illegal arrest must be suppressed. We affirm.

I
These are the facts as established by Judge Sachar's findings at the hearing on the suppression motion. On February 14, 1987 defendant Alvae Moore wrote a bad check for $315. Her victim swore a municipal complaint on February 24, 1987 in the Plainfield Municipal Court. On May 22, 1989 the court issued a bench warrant for defendant's failure to appear for a plea on the bad check charge. The warrant stated, in standard language, that "defendant may be held to bail before an authorized official if the amount of the bail is shown above." The bail amount recorded on the warrant was $250.
On May 23, 1989 the warrant was faxed as a detainer by the Plainfield Police Department to the Somerset County Jail where defendant was then held on unrelated charges from Watchung Borough and eventually was sentenced to serve a county jail term. On October 10, 1989 defendant's family posted the $250 bail with the Plainfield Municipal Court. On October 13, 1989 the Somerset County Jail received a bail receipt from the Plainfield Municipal Court and released defendant, effectively lifting the bench warrant detainer. On October 25, 1989 defendant appeared in the Plainfield Municipal Court and pled guilty to the bad check charge. The bench warrant then was marked: "recalled, summons returned" by Plainfield court personnel.
*15 On November 21, 1989 defendant was arrested by Officer Reid of the Plainfield Police Department who acted on the mistaken belief that a valid arrest warrant was still outstanding for her. The search incident to the arrest revealed two plastic vials of cocaine weighing .205 grams. The grand jury charged defendant with third-degree possession of cocaine in violation of N.J.S.A. 2C:35-10(a)(1).
The State contends that the Plainfield Municipal Court neither notified the Plainfield Police Department when bail was posted on the bench warrant detainer nor gave notice of the later recall of the warrant by the court. The State claims that since the Plainfield police were not at fault, the arrest should stand. The defendant disputes the Police Department's claim of lack of fault. Defendant also claims that the arrest was invalid no matter where the administrative fault may reside because the warrant twice had been rescinded or vacated, once by posting bail and once by court order.
There is no dispute that the arresting officer acted in good faith in executing what he thought was a valid warrant extant on the log book of his department. He knew defendant by sight, from school and the neighborhood. He had remembered that an active warrant for her was outstanding on the police log. He personally verified the active warrant, allegedly "physically lodged at the police station," by radio dispatch before he made the arrest and search on the streets of Plainfield.
At the suppression hearing, considerable murky testimony was devoted to whether the error was the fault of the police department, the municipal court staff, or the county sheriff's personnel. In our view, the evidence does not clearly or conclusively establish exactly who was at fault or to what extent in the circumstance. Judge Sachar found that the Police Department at least shared administrative culpability with the municipal court staff and probably with the sheriff's office as well. The evidence fairly supports his view. As to the overall administrative situation, the judge found that: "In any event, comparing *16 the handwritten court-transmitted sheet listing warrant activity, and the computer printout, reveals numerous unexplained inconsistencies and omissions and the court does not find any reliable uniform `system' to check the accuracy of outstanding warrants." The judge also observed that, "conflicting testimony elicited from Officer Reid on different hearing dates revealed that outstanding warrants were only purged every two years, or two months, respectively." The judge pointed out that once the warrant was lodged as a detainer when defendant was a prisoner in the Somerset County jail, law enforcement authorities should have deleted the warrant from the municipal computer, as well as the NCIC-SCIC computer, if it had been recorded there. Certainly, the warrant should have been deleted from the computer when bail was posted on the bench warrant on October 13, when or if the Plainfield authorities had been notified by the sheriff's personnel of the defendant's release on proper bail.
But our decision here does not turn on who precisely was at fault or on the comparative rectitude of the several actors from the law enforcement and court administration communities. The record before us amply demonstrates just how futile inquiry into "systemic bureaucratic failures" can be. The inescapable consequence, after the finger-pointing is over, is that defendant was arrested illegally. We hold that the fruits of such an unlawful arrest are not available to the State for her prosecution even though the particular arresting officer acted in good faith and without culpability.

II
The State's contention for reversal here is no more than a plea for a "good faith" exception to the exclusionary rule. Our Supreme Court already has rejected such an exception on State constitutional grounds in State v. Novembrino, 105 N.J. 95, 157-58, 519 A.2d 820 (1987), where a search warrant had issued *17 without probable cause because of judicial error. The Court stated quite emphatically:
The exclusionary rule, by virtue of its consistent application over the past twenty-five years, has become an integral element of our state-constitutional guarantee that search warrants will not issue without probable cause. Its function is not merely to deter police misconduct. The rule also serves as the indispensable mechanism for vindicating the constitutional right to be free from unreasonable searches. Because we believe that the good-faith exception to the exclusionary rule adopted in [United States v.] Leon, [468 U.S. 897, 82 L.Ed.2d 677 (1984)] would tend to undermine the constitutionally-guaranteed standard of probable cause, and in the process disrupt the highly effective procedures employed by our criminal justice system to accommodate that constitutional guarantee without impairing law enforcement, we decline to recognize a good-faith exception to the exclusionary rule.
The State urges that we should consider this mistaken arrest situation as different from the issuance of a bad search warrant in Novembrino. We see no justifiable distinction between a judicial error on the existence of probable cause which causes a bad search warrant to issue, and the administrative errors committed here; whether the errors, resulting in a bad arrest, are attributable to law enforcement, judicial administration, or a combination of both does not matter.
We hope that the invocation of the exclusionary rule in this rare but appropriate case operates as an incentive for efficient, constitutionally-acceptable record keeping in the criminal justice system, just as we hope that the exclusionary rule motivates adherence to the probable cause standard for search warrants. "In New Jersey, we have viewed the exclusionary rule as serving both to deter unlawful conduct and to vindicate fundamental guarantees." State v. Minter, 116 N.J. 269, 280, 561 A.2d 570 (1989). We also recall Justice Murphy's statement in dissent, cited with approval in Novembrino, 105 N.J. at 157, n. 39, 519 A.2d 820, in Wolf v. Colorado, 338 U.S. 25, 41, 69 S.Ct. 1359, 1369, 93 L.Ed. 1782, 1793 (1949), that "there is but one alternative to the rule of exclusion. That is no sanction at all."
In Novembrino, the Supreme Court also said: "We see no need in New Jersey to experiment with the fundamental right protected by the fourth-amendment counterpart of our State *18 Constitution." Id. 105 N.J. at 159, 519 A.2d 820. Our Court would "not subject the procedures that vindicate the fundamental rights guaranteed by Article I, paragraph 7 of our State Constitution  procedures that have not diluted the effectiveness of our criminal justice system  to the uncertain effects that we believe will inevitably accompany the good-faith exception to the federal exclusionary rule." Id. at 159, 519 A.2d 820.
In the case before us the judge found "error in the record keeping of the police." He justifiably found that "whatever the mistakes of the municipal court [in not telling the police of the vacation of the warrant on October 25], they were all subsequent to when the police detached the active warrant from the index card it was stapled to so it could be faxed to the Somerset County Jail." The police never returned the warrant itself to their active file, but nonetheless the police failed to remove the warrant "from the active warrant book and computers." The judge observed:
As a result of the warrant being served by the Plainfield police on the Somerset County Jail, defendant was confined to jail until bail was paid. After bail was paid she was let out on the street, but remained subject to the inevitability of eventual arrest. It did not matter to defendant which of the law enforcement authorities, the Plainfield police or the Somerset County Sheriff's Office, failed to assure that police records were kept current.
Professor LaFave discusses this concern about "police records and the problem of updating" in 2 Wayne R. LaFave, Search & Seizure § 3.5(d) at 19-24 (2d ed. 1987 and 1992 Supp), where he has collected the pertinent cases. He concludes that "the point is that the police may not rely upon incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected." Id. at 21-22, n. 75 (citing Carter v. State, 18 Md. App. 150, 305 A.2d 856 (1973) (police failed to rescind or cancel stolen car report)); People v. Ramirez, 34 Cal.3d 541, 194 Cal. Rptr. 454, 668 P.2d 761 (1983) (bench warrant had been recalled six months earlier); People v. Mitchell, 678 P.2d 990 (Colo. 1984) (warrant issued in error after fine paid); People v. Lawson, 119 Ill. App.3d 42, 74 Ill.Dec. 668, 456 N.E.2d 170 (1983) (warrant had been executed over a month *19 before)). LaFave suggests "that when the law enforcement system elects to construct an elaborate record keeping system it must be charged with the responsibility of keeping that system reasonably up to date" in this, the information age, 2 LaFave, supra, at 23 (relying on United States v. Mackey, 387 F. Supp. 1121 (D.Nev. 1975)).
As LaFave stresses: "The fundamental point is that it is not merely a matter of whether the arresting officer was at fault." Id. at 24. He agrees with the conclusion of the New York Court of Appeals that "an arrest is invalid when the arresting officer acts upon information in criminal justice system records which, though correct when put into the records, no longer applies, and which, through fault of the system, has been retained in its records after it became inapplicable." Id. at 24 n. 81 (quoting People v. Jennings, 54 N.Y.2d 518, 446 N.Y.S.2d 229, 230, 430 N.E.2d 1282, 1283 (1981)). In Jennings, defendant was arrested after a traffic stop on an old parole warrant which had been vacated four months earlier upon execution. 446 N.Y.S.2d at 230, 430 N.E.2d at 1283. The New York Court of Appeals emphasized in Jennings that "the good faith of the enforcement authorities cannot validate an arrest" on a stale, vacated warrant. Id. 446 N.Y.S.2d at 232, 430 N.E.2d at 1285. Accord, Pesci v. State, 420 So.2d 380 (Fla.App. 1982) (alias capias had been quashed and criminal justice system records were incorrect.); People v. Fields, 785 P.2d 611 (Colo. 1990) (arrest pursuant to incorrect computer information invalid); People v. McElhaney, 146 Misc.2d 748, 552 N.Y.S.2d 825 (Sup. Ct. 1990) (arrest based on incorrect computer-generated police stolen vehicle report invalid and evidence suppressed). See also State v. Lanoue, 156 Vt. 35, 587 A.2d 405, 408-09 (1991) (dissenting opinion), which discusses the question of limiting "the system" to law enforcement agencies only or including administrative agencies, like the Division of Motor Vehicles.
LaFave also rejects as "bizarre" our pre-Novembrino "good faith" decision on this point in State v. Cross, 164 N.J. Super. 368, 396 A.2d 604 (App.Div. 1978), relied upon by the State here, *20 which excused the police's one-month failure to cancel a stolen car alert upon returning the car to the owner and upheld the arrest. LaFave, supra, at 24 n. 80. The police said "they forgot to cancel their teletype in the N.C.I.C. computer." Cross, 164 N.J. Super. at 371, 396 A.2d 604. We depart from our 1978 opinion in Cross, as Novembrino surely compels.
Finally, we recognize that some delay in updating information is inherent and must be countenanced. "Courts are understandably not inclined to infer police misconduct when the records lack currency by just a few days." LaFave, supra § 3.5(d) at 23 n. 79 (citing Commonwealth v. Riley, 284 Pa.Super. 280, 425 A.2d 813 (1981) (four-day interval acceptable); Childress v. United States, 381 A.2d 614 (D.C.App. 1977) (again four-day delay acceptable)); see State v. Scott, 231 N.J. Super. 258, 555 A.2d 667 (App.Div. 1989), rev'd on dissenting opinion, 118 N.J. 406, 571 A.2d 1304 (1990) (court had vacated temporary restraining order in domestic violence case just four days before arrest). In general, an officer may make a constitutional arrest based upon usually reliable warrant records. We hold, however, that where those records are demonstrably incorrect because the warrant has been vacated, the State must carry the burden to establish justification for any administrative delay in their update. Quite clearly, the factual findings of the motion judge in this case are not consistent with any such justification.
In the case before us, the bench warrant was first lodged as a detainer on May 23, bail was posted on October 10, and defendant was released on October 13. She pled guilty to the charge on October 25. None of this information reached the proper data bank before her arrest on November 21. This is too much "administrative lag" for acceptable constitutional tolerances. Constitutional rights cannot bow to bureaucratic inefficiency.
We affirm.