991 A.2d 281 (2010)
412 N.J. Super. 492
STATE of New Jersey, Plaintiff-Respondent,
v.
Germaine A. HANDY, Defendant-Appellant.
No. A-1838-07T4
Superior Court of New Jersey, Appellate Division.
Argued February 24, 2010.
Decided April 12, 2010.
*282 Stephen P. Hunter, Assistant Deputy Public Defender, argued for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Hunter, of counsel and on the brief).
*283 Steven A. Yomtov, Deputy Attorney General, argued for respondent (Paula T. Dow, Attorney General, attorney; Mr. Yomtov, of counsel and on the brief).
Before Judges CUFF, MINIMAN and WAUGH.
The opinion of the court was delivered by
WAUGH, J.A.D.
Defendant Germaine A. Handy appeals his conviction, following a guilty plea, for possession of a controlled dangerous substance (CDS) in violation of N.J.S.A. 2C:35-10(a)(1). The appeal requires us to determine whether evidence found during the search incident to Handy's arrest should have been suppressed because the dispatcher who incorrectly informed the arresting officer that there was an outstanding arrest warrant acted unreasonably under the circumstances, even though the conduct of the arresting officer himself was reasonable. We conclude suppression is required and, consequently, reverse the conviction.

I.
The following facts are garnered primarily from the testimony of Millville Police Officer Carlo Drogo during the suppression hearing held on August 18, 2006.
On the evening of September 13, 2005, Drogo responded to a backup call from Special Officer Anthony Sills, who had stopped several individuals, including Handy, for city ordinance violations because they were riding their bicycles on the sidewalk. It appears that none of those individuals, including Handy, had drivers licenses or other forms of identification with them at the time. While Sills issued the appropriate summonses, Drogo collected the names and birth dates of the individuals and called the information into Millville Police dispatch to determine whether there were any outstanding warrants.
Handy told Drogo that his date of birth was "March 18, 1974" and that his name was "Germaine Handy," which he spelled for Drogo. He also informed Drogo of his address on Broad Street in Millville. Drogo provided Handy's name and date of birth, along with those of the other individuals, to the police dispatcher for the warrant check.[1]
The dispatcher subsequently reported to Drogo that there was an outstanding warrant for Handy's arrest. Drogo informed Handy about the warrant, placed him under arrest, and conducted a search of his person. During the search incident to the arrest, Drogo discovered crack cocaine and marijuana.
Only after Handy had been arrested and placed in the back of the police car did the police dispatcher inform Drogo that there was a "discrepancy" with respect to the date of birth on the warrant. Drogo transported Handy to the police station and attempted to verify the warrant. In the process, Drogo also found that there was a difference in the spelling of Handy's first name and the first name on the warrant, a discrepancy that the police dispatcher had either not noticed or not reported to Drogo.
The arrest warrant, which had been issued on June 6, 1996, was for a "Jermaine O. Handy," whose date of birth was given as March 14, 1972, and whose address was *284 listed as being in Los Angeles, California. The offense underlying the warrant was a violation of N.J.S.A. 39:3-38.1(b), now repealed, which makes it a disorderly persons offense to "[e]xhibit[] to a police officer or judge in accordance with R.S. 39:3-29 any falsely made, altered, forged or counterfeited motor vehicle certificate of registration or driver's license, knowing the same to be falsely made, altered, forged or counterfeited."
According to the pre-sentence report, Handy's middle initial is "A" for "Antonio." Although Drogo discovered that the date of birth provided to him by Handy differed from the one on Handy's driver's license and dates of birth listed under Handy's "arrest jacket" in the Millville computer system, we note that it is the same as the date of birth listed on the pre-sentence report.
Drogo placed a call to the Chesterfield Township Municipal Court, which had issued the warrant. The call was answered by automated voicemail. Drogo left a message inquiring about the warrant, but he never received a return call. Unable to verify that the warrant was for the person he arrested, Drogo only processed Handy on the new charge. The State offered no evidence at the suppression hearing that defendant was the Handy for whom the warrant had been issued ten years earlier.
Handy was indicted on December 14, 2005. Indictment No. 05-12-1153 charged him with one count of third-degree possession of a CDS. Handy filed a motion to suppress the evidence seized incident to his arrest. The motion was heard and denied on August 18, 2006. The motion judge found that the police dispatcher's behavior was "unreasonable" because the dispatcher failed to immediately inform Drogo that there were discrepancies with respect to the date of birth and spelling of the first name. The judge nonetheless determined that, although it was a "close call on the facts that [were] presented," the arresting officer's actions in searching and arresting defendant were reasonable in light of the information provided by the dispatcher.
On November 2, 2006, Handy was indicted on additional, but unrelated charges. Indictment No. 06-11-1108 charged him with third-degree possession of a CDS, in violation of N.J.S.A. 2C:35-10(a)(1) (count one), and fourth-degree tampering with physical evidence in violation of N.J.S.A. 2C:28-6(1) (count two).
Handy had moved for reconsideration of the denial of his motion to suppress. However, on December 20, 2006, he withdrew the motion and accepted a plea offer. He pled guilty to Indictment No. 05-12-1153, third-degree possession of a CDS, and to count two of Indictment No. 06-11-1108, fourth-degree tampering with physical evidence. In exchange, the State agreed to recommend three years imprisonment for the CDS charge and a concurrent one year of imprisonment for the tampering with evidence charge. The remaining charge was dismissed.
On July 20, 2007, the judge sentenced Handy in accordance with the State's recommendation as contemplated in the plea agreement. This appeal followed.

II.
Handy raises the following argument on appeal:
THE JUDGE'S FINDING THAT "THE DISPATCHER WAS UNREASONABLE" SHOULD HAVE RESULTED IN SUPPRESSION BECAUSE THE EXCLUSIONARY RULE APPLIES WHEN A POLICE DISPATCHER'S ACTIONS RESULT IN AN UNREASONABLE SEARCH *285 OR SEIZURE. U.S. Const. amends. IV, XIV; N.J. Const. art. I, ¶ 10.

A.
The Supreme Court has explained the standard of review applicable to a trial court's decision on a motion to suppress as follows:
Our analysis must begin with an understanding of the standard of appellate review that applies to a motion judge's findings in a suppression hearing. As the Appellate Division in this case clearly recognized, an appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are "supported by sufficient credible evidence in the record." [State v. Elders, 386 N.J.Super. 208, 228, 899 A.2d 1037 (App.Div.2006)] (citing State v. Locurto, 157 N.J. 463, 474, 724 A.2d 234 (1999)); see also State v. Slockbower, 79 N.J. 1, 13, 397 A.2d 1050 (1979) (concluding that "there was substantial credible evidence to support the findings of the motion judge that the . . . investigatory search [was] not based on probable cause"); State v. Alvarez, 238 N.J.Super. 560, 562-64, 570 A.2d 459 (App.Div.1990) (stating that standard of review on appeal from motion to suppress is whether "the findings made by the judge could reasonably have been reached on sufficient credible evidence present in the record" (citing State v. Johnson, 42 N.J. 146, 164, 199 A.2d 809 (1964))).
An appellate court "should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the `feel' of the case, which a reviewing court cannot enjoy." Johnson, supra, 42 N.J. at 161, 199 A.2d 809. An appellate court should not disturb the trial court's findings merely because "it might have reached a different conclusion were it the trial tribunal" or because "the trial court decided all evidence or inference conflicts in favor of one side" in a close case. Id. at 162, 199 A.2d 809. A trial court's findings should be disturbed only if they are so clearly mistaken "that the interests of justice demand intervention and correction." Ibid. In those circumstances solely should an appellate court "appraise the record as if it were deciding the matter at inception and make its own findings and conclusions." Ibid.

[State v. Elders, 192 N.J. 224, 243-44, 927 A.2d 1250 (2007).]
Our review of a judge's legal conclusions, however, is plenary. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).

B.
The Fourth Amendment of the United States Constitution and Article 1, Paragraph 7, of the New Jersey Constitution both prohibit unreasonable searches and seizures. The exclusionary rule, which is one remedy for violations of those provisions, operates to preclude prosecutorial use of evidence obtained from unlawful searches and seizures. Mapp v. Ohio, 367 U.S. 643, 654-56, 81 S.Ct. 1684, 1691-92, 6 L.Ed.2d 1081, 1089-90 (1961); State v. Reid, 194 N.J. 386, 405, 945 A.2d 26 (2008). Its primary purpose is to deter future police misconduct. Ibid.
The federal courts recognize a good faith exception to the exclusionary rule, pursuant to which evidence will not be suppressed if the police officers employed an objective standard of reasonableness and acted in good faith with respect to a warrant later found to be defective. United States v. Leon, 468 U.S. 897, 920, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677, 697 (1984). New Jersey, *286 however, does not recognize a good faith exception. State v. Novembrino, 105 N.J. 95, 153-54, 519 A.2d 820 (1987). We do recognize, however, that the exclusionary rule does not apply to all instances where mistakes are made in executing a warrant:
The basic test under both the Fourth Amendment and Article I, paragraph 7 of the New Jersey Constitution is one of "objective reasonableness" in light of "the facts known to the . . . officer at the time." [State v. Bruzzese, 94 N.J. 210, 221, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984)]; accord [Maryland v. Garrison, 480 U.S. 79, 88, 107 S.Ct. 1013, 1018, 94 L.Ed.2d 72, 83 (1987)]; see also United States v. Ramirez, 523 U.S. 65, [69,] 118 S.Ct. 992, 996, 140 L.Ed.2d 191, 198 (1998) ("The general touchstone of reasonableness which governs Fourth Amendment analysis . . . governs the method of execution of the warrant."). This reasonableness test may be satisfied even though the police have made a mistake in executing a warrant. As the Court observed in Illinois v. Rodriguez, 497 U.S. 177, 185, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148, 159 (1990), "what is generally demanded of the many factual determinations that must regularly be made by agents of the government whether the magistrate issuing a warrant [or] the police officer executing a warrant . . .  is not that they always be correct, but that they always be reasonable." Therefore, if a police officer's actions in executing a warrant are reasonable, there is no constitutional violation and thus no need to consider the availability of a good faith exception to the exclusionary rule.

[State v. Green, 318 N.J.Super. 346, 354, 723 A.2d 1012 (App.Div.1999) (emphasis added).]

III.
Handy does not dispute the motion judge's factual findings, which we have determined were supported by the record. Indeed, he relies upon the judge's determination that the police dispatcher acted unreasonably and argues that the motion judge made an error of law in focusing solely on the conduct of the police officer in denying the motion. He argues that the judge should have suppressed the evidence on the basis of the unreasonable conduct of the police dispatcher, who informed Drogo that there was a warrant for Handy without telling him about the significant discrepancies. We agree.
The United States Supreme Court has twice had occasion to analyze whether the exclusionary rule applies to conduct beyond that of the arresting officer. In Arizona v. Evans, 514 U.S. 1, 15, 115 S.Ct. 1185, 1193, 131 L.Ed.2d 34, 47 (1995), the Court found that the exclusionary rule did not apply where a court clerk had failed to update the computer system to reflect that the warrant at issue had been quashed. The Court explained its reasoning, in part, as follows:
Finally, and most important, there is no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed. Because court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion of evidence could not be expected to deter such individuals from failing to inform police officials that a warrant had been quashed.
[Ibid. (citations omitted).]
*287 More recently, in Herring v. United States, ___ U.S. ___, ___, 129 S.Ct. 695, 699, 172 L.Ed.2d 496, 503 (2009), the Court found that the error of a warrant clerk, who was a law enforcement employee in an adjacent county, in failing to update the database to reflect that the warrant had been recalled, did not trigger the exclusionary rule. The specific facts in Herring, which differ markedly from those in this case, were as follows:
On July 7, 2004, Investigator Mark Anderson learned that Bennie Dean Herring had driven to the Coffee County Sheriff's Department to retrieve something from his impounded truck. Herring was no stranger to law enforcement, and Anderson asked the county's warrant clerk, Sandy Pope, to check for any outstanding warrants for Herring's arrest. When she found none, Anderson asked Pope to check with Sharon Morgan, her counterpart in neighboring Dale County. After checking Dale County's computer database, Morgan replied that there was an active arrest warrant for Herring's failure to appear on a felony charge. Pope relayed the information to Anderson and asked Morgan to fax over a copy of the warrant as confirmation. Anderson and a deputy followed Herring as he left the impound lot, pulled him over, and arrested him. A search incident to the arrest revealed methamphetamine in Herring's pocket, and a pistol (which as a felon he could not possess) in his vehicle. . . .
There had, however, been a mistake about the warrant. The Dale County sheriff's computer records are supposed to correspond to actual arrest warrants, which the office also maintains. But when Morgan went to the files to retrieve the actual warrant to fax to Pope, Morgan was unable to find it. She called a court clerk and learned that the warrant had been recalled five months earlier. Normally when a warrant is recalled the court clerk's office or a judge's chambers calls Morgan, who enters the information in the sheriff's computer database and disposes of the physical copy. For whatever reason, the information about the recall of the warrant for Herring did not appear in the database. Morgan immediately called Pope to alert her to the mixup, and Pope contacted Anderson over a secure radio. This all unfolded in 10 to 15 minutes, but Herring had already been arrested and found with the gun and drugs, just a few hundred yards from the sheriff's office. . . .
[Id. at ___, 129 S.Ct. at 698, 172 L.Ed.2d at 502-03.]
The Court held that the exclusionary rule should be employed only when its deterrent effect is needed, rather than whenever there is an unlawful search or seizure. Id. at ___, 129 S.Ct. at 700, 172 L.Ed.2d at 504.
The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct. As we said in [United State v. Leon], "an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus" of applying the exclusionary rule. 468 U.S. [897, 911, 104 S.Ct. 3405, 3414, 82 L.Ed.2d 677, 691 (1984)]. Similarly, in [Illinois v. Krull] we elaborated that "evidence should be suppressed `only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" 480 U.S. [340, 348-49, 107 S.Ct. 1160, 1166, 94 L.Ed.2d 364, 374 (1987)] (quoting United States v. Peltier, 422 U.S. 531, 542, 95 S.Ct. 2313, [2320, 45 L.Ed.2d 374, 383] (1975)).

*288 . . . .
. . . To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level.
[Id. at ___, 129 S.Ct. at 701-02, 172 L.Ed.2d at 506-07 (footnote omitted).]
The facts in the case before us are quite distinct from those in Herring. Rather than a past clerical error, such as neglecting to remove a no-longer valid warrant, the police dispatcher in this case inaccurately reported to the police officer in the field that there was an active warrant for Handy when, in fact, there were significant discrepancies in the spelling of the first name and the date of birth that were not reported at the same time, thereby causing the arrest of the wrong person.[2] Had the police dispatcher reported the discrepancies at the same time as the existence of the warrant, Drogo would have attempted to verify that the warrant was for Handy before, rather than after, the arrest. Inasmuch as he was never able to verify that the warrant was for Handy, the arrest and the resulting search would not have taken place.
The deterrent value of applying the exclusionary rule in this case is, in our view, quite significant, especially in contrast to the low value under the factual circumstances before the Supreme Court in Herring. The police dispatcher is the crucial link between the officer in the field and police headquarters. The officer depends on receiving the correct information from the dispatcher, information such as whether there is or is not an outstanding arrest warrant for the person with whom the officer is then face to face. Misinformation either way has the potential to leave the officer either unaware that he or she is dealing with a dangerous criminal or arresting the wrong person.
The need to avoid the former is obvious and clearly in the best interest of the police officer in the field, the need to avoid the latter finds its basis in the Fourth Amendment's protection of "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." See also N.J. Const. art. I, ¶ 7. The police officer in the field and the citizen on the street both benefit from a police dispatch system that is free of unreasonable conduct by dispatchers who fail to ensure that they are providing the available information about outstanding warrants as accurately and completely as possible.
Although we believe our decision in this case is consistent with the Supreme Court's decision in Herring, the courts of this State are not required to apply federal search and seizure law in interpreting the search and seizure requirements of the New Jersey Constitution. Novembrino, supra, 105 N.J. at 101-02, 519 A.2d 820. As our Supreme Court observed in Reid, supra, 194 N.J. at 396, 945 A.2d 26 (quoting Novembrino, supra, 105 N.J. at 145, 519 A.2d 820), "on multiple occasions this Court has held that the New Jersey *289 Constitution `affords our citizens greater protection against unreasonable searches and seizures' than the Fourth Amendment."
Our decision here is fully consistent with our decision in State v. Moore, 260 N.J.Super. 12, 16, 614 A.2d 1360 (App.Div. 1992), in which we held that "the fruits of. . . an unlawful arrest are not available to the State for [the defendant's] prosecution even though the particular arresting officer acted in good faith and without culpability." In Moore, the defendant was arrested on a bench warrant that was no longer valid because she had posted bail and pled guilty to the underlying offense, but the court never recorded that the bench warrant was satisfied and the police never deleted it from their computer databases after the defendant's earlier arrest. Id. at 13-15, 614 A.2d 1360. We held that "whether the errors . . . resulting in a bad arrest . . . are attributable to law enforcement, judicial administration, or a combination of both does not matter." Id. at 17, 614 A.2d 1360. We placed emphasis on the fact that the purpose of the exclusionary rule in New Jersey is "`both to deter unlawful conduct and to vindicate fundamental guarantees.'" Ibid. (quoting State v. Minter, 116 N.J. 269, 280, 561 A.2d 570 (1989)). Significantly for the purposes of this case, we relied on Professor LaFave's assertion that "`the police may not rely upon incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected.'" Id. at 18, 614 A.2d 1360 (quoting 2 Wayne R. LaFave, Search & Seizure § 3.5(d) at 21-22 n. 75, (2d ed. 1987 and 1992 Supp.)).[3]
Here, the police were responsible, through the unreasonable actions of the police dispatcher, for conveying incomplete and inaccurate information to the arresting officer. If the citizens' right to be free from unreasonable search and seizure is to be vindicated, then the exclusionary rule must be applied beyond the officer in the field and to the police employee who acts unreasonably in supplying critical, but inaccurate or incomplete, information under circumstances such as those before us. As the Supreme Court noted in Novembrino, supra, 105 N.J. at 153, 519 A.2d 820, "[o]ne obvious consequence of the application of the exclusionary rule in New Jersey has been the encouragement of law-enforcement officials to comply" with "constitutionally-mandated" requirements. The Court declined to adopt the good faith exception because of its concern that "the good-faith exception assures . . . that the constitutional standard will be diluted." Ibid.
In our view, failure to extend the requirement of reasonable conduct to the police dispatcher under the circumstances of this case would have considerable potential to "dilute" the protections against unreasonable search and seizure guaranteed by the New Jersey Constitution and, we believe, the Fourth Amendment. Consequently, we reverse the denial of the motion to suppress and vacate the conviction under Indictment No. 05-12-1153. The *290 matter is remanded to the Law Division for resentencing on the remaining conviction.
Reversed.
NOTES
[1] It is not clear from the record whether the dispatcher was a police officer or a civilian employed as a police dispatcher. At oral argument before us, the State conceded that the exclusionary rule would probably be applicable had the dispatcher been a police officer. We have concluded that it applies in either case.
[2] The State's suggestion on appeal that the warrant may actually have been for Handy is simply not supported in the record. As previously noted, the date of birth Handy gave to Drogo is the same date of birth reflected on the pre-sentence report. In addition, the list of aliases in the pre-sentence report does not include "Jermaine O. Handy," the name on the warrant.
[3] The State's reliance on State v. Diloreto, 180 N.J. 264, 279-80, 850 A.2d 1226 (2004), is misplaced. That case involved a community policing action in which the defendant's status as a missing person had not been timely removed by the police from a database. Id. at 270, 850 A.2d 1226. In addition, the illegal weapons at issue were discovered during a pat down while defendant's status was being sorted out rather than incident to arrest on the basis of an invalid warrant. Id. at 269, 850 A.2d 1226. The Court itself placed emphasis on the narrowness of its holding: "It bears repeating that the most significant factor in our analysis (and a factor that should serve to narrow the reach of our holding) is that the police in this case were responding to an alert regarding an endangered missing person." Id. at 281, 850 A.2d 1226.