Justice LaVECCHIA,
concurring.
The Court granted the State leave to appeal an interlocutory order of the Appellate Division. The Appellate Division’s order affirmed the grant of defendant’s motion to suppress evidence seized after his arrest on a warrant that, unbeknownst to the arresting officers, had been judicially vacated eighteen months earlier but had not been removed from the relevant computer database showing active warrants.
I and the concurring members of the Court conclude that defendant’s arrest — made in the absence of either a valid warrant or probable cause — was unlawful. In accordance with our decision in State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987), the evidence seized as a result of that unlawful arrest is subject to *579 exclusion without application of an exception based on the subjective good faith of the executing officers. Thus, we affirm the Appellate Division judgment.
I.
A.
This matter comes before us based on the record developed in defendant’s motion to suppress. On March 26, 2009, Municipal Court Judge Daniel J. DiBenedetto issued a warrant for the arrest of defendant for non-payment of fines owed to the City of Asbury Park. Defendant learned of that warrant while incarcerated in Bayside State Prison on an unrelated charge. He sent a letter to the municipal court requesting that his fines in connection with two matters — a criminal conviction and a motor vehicle violation— be vacated due to hardship. On April 16, 2010, Municipal Court Judge Mark T. Apostolou granted defendant’s request.
The Asbury Park Municipal Court Administrator, Patricia Green, provided testimony that when a judge vacates a fine, the warrant associated with the non-payment of that fine is necessarily vacated. Specifically, she explained that once the vacation of a fine is entered into the relevant database, the outstanding warrant in that database is also vacated. The municipal court employees, not the police department, are responsible for entering that information. According to Green, in carrying out their responsibility of processing paperwork for arrests and violations within Asbury Park, she and her colleagues utilize separate computer databases for traffic violations and criminal matters: the Automated Traffic System (ATS) and the Automated Complaint System (ACS), respectively. In respect of defendant, Green stated that a deputy municipal court administrator properly vacated the traffic fines in the ATS system but “failed to go into the [ACS] system and vacate the criminal” fines there. Therefore, the ACS computer system did not reflect that the criminal fines were vacated, and, *580 correspondingly, the arrest warrant associated with those fines was not vacated.
B.
On October 18, 2011, Officer Love of the Asbury Park Police Department received a call directing him to 835 Dunlewy Street. The dispatcher informed the officer that a suspicious vehicle — a white Mercury with tinted windows and containing two males— had been idling at that address for some time. Officer Love reported that Dunlewy Street was a “high crime area,” where drugs were both used and sold and where there had been recent burglaries. Officer Love proceeded to Dunlewy Street and, upon arrival, approached the vehicle meeting the reported description. Officer Love inquired of the driver, defendant, his purpose for sitting there. Defendant responded that he was waiting for a female friend that he had met recently and pointed out 831 Dunlewy Street as her residence. Officer Love asked defendant for identification; he provided a New Jersey driver’s license.
Subsequent efforts to substantiate defendant’s given reason for his presence on Dunlewy Street proved unfruitful but are not relevant to this appeal. What is important is that Officer Love asked dispatch to run a warrant check, and dispatch advised Officer Love that defendant had an outstanding arrest warrant. Defendant was placed under arrest. Officer Love patted defendant down for weapons and felt what he thought was a large amount of money; defendant confirmed that he had money on him. Officer Love brought defendant to the police station in his patrol car. Officer Love testified that he had inspected the inside of his patrol car earlier that day and that no one else had been inside since. During the drive, the officer noticed that defendant was moving around in the back seat.
After removing defendant from the vehicle, Officer Love spotted suspected cocaine on the back seat and white residue on defendant’s fingers. Another officer secured defendant while Officer Love pulled up the bench seat in the back of the car, revealing *581 additional suspected controlled dangerous substances. Those substances were seized as evidence and their admissibility is the subject of this appeal. Defendant was later found to be in possession of $2,317 in cash. None of the officers were aware that the warrant on which defendant was initially arrested had been vacated.
C.
For purposes of this appeal, we note defendant was indicted for third-degree possession of a controlled dangerous substance (cocaine), N.J.S.A. 2C:35-10(a)(l), and second-degree possession of a controlled dangerous substance (cocaine) with intent to distribute, N.J.S.A. 2C:35-5(b)(2).
On April 30, 2012, defendant filed a motion to suppress the evidence seized from the police vehicle. In support of that motion, defendant argued that Officer Love’s questioning and warrant check were unconstitutional. Following a hearing at which only Officer Love testified, the motion court denied the motion to suppress, finding the officer’s conduct constitutionally permissible.
In January 2013, after the jury had been selected and sworn in defendant’s criminal trial, defendant asked the court to reopen his suppression motion, relying on a letter from the Asbury Park Municipal Court, dated April 21, 2010, which indicated that defendant’s fines had been vacated. Defendant submitted that that letter showed that his initial arrest was unlawful. The court adjourned the trial’s start to research the matter further. Thereafter, with defendant’s consent and waiver of double jeopardy, the trial judge declared a mistrial and granted defendant’s motion to reopen the suppression issue.
Following a hearing at which Green, the municipal court administrator, testified, the trial court granted the motion to suppress. Relying on State v. Moore, 260 N.J.Super. 12, 16, 614 A.2d 1360 (App.Div.1992), the trial court held that defendant was arrested unlawfully and therefore the seized drugs were inadmissible “fruits of such an unlawful arrest.” The trial court determined *582 that “the lack of culpability on the part of the [police department]” was irrelevant, citing “the non-deterrent purposes of the exclusionary rule.”
The Appellate Division granted leave for the State to appeal and, on April 11, 2014, affirmed the trial court’s suppression of the evidence. The appellate panel pointed to Moore, supra, in which an earlier Appellate Division panel had relied on Novembrino, in finding inadmissible the fruits of an arrest based on a vacated warrant that improperly remained marked as “active” in police records, “even though the particular arresting officer acted in good faith and without culpability.” 260 N.J.Super. at 14, 16-20, 614 A.2d 1360. The panel also distinguished the arrests in State v. Diloreto, 180 N.J. 264, 850 A.2d 1226 (2004), and State v. Pitcher, 379 N.J.Super. 308, 878 A.2d 8 (App.Div.2005), certif. denied, 186 N.J. 242, 892 A.2d 1288 (2006), by noting that the arrests were not constitutionally defective. Addressing the question left open in State v. Handy, 206 N.J. 39, 51-52, 18 A.3d 179 (2011), regarding the admissibility of evidence when “[t]he police department did not behave in an unreasonable manner in that it relied on an ostensibly valid arrest warrant,” the panel held that, consistent with Novembrino, the evidence seized from defendant must be excluded.
This Court granted the State’s motion for leave to appeal the interlocutory order of the Appellate Division. State v. Shannon, 218 N.J. 528, 95 A.3d 256 (2014). We also granted amicus curiae status to the Attorney General of New Jersey and to the American Civil Liberties Union of New Jersey (ACLU).
II.
A.
The State submits that because the test for assessing the constitutionality of a search or seizure is “objective reasonableness,” neither the exclusionary rule nor the good faith exception is implicated in this appeal. The State contends that defendant’s *583 arrest was based on Officer Love’s objectively reasonable reliance on the vacated warrant; thus, no constitutional violation occurred, and the Appellate Division decision should be reversed.
The State argues that New Jersey case law has permitted officer reliance on erroneous database information to substantiate a stop or arrest and that, in practical effect, this case is indistinguishable from State v. Green, 318 N.J.Super. 346, 723 A.2d 1012 (App.Div.1999). The State also cites to Hewing v. United States, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), and Arizona v. Evans, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), as demonstrative of situations in which the United States Supreme Court has declined to suppress evidence seized following arrests made on misinformation contained in official databases.
Even if defendant’s constitutional rights were violated, the State argues that the exclusionary rule should not be applied. The State maintains that the exclusionary rule’s primary purpose is deterrence and that neither police officers nor court clerks would be deterred by suppression of the evidence in this matter. Likewise, the State argues that the exclusionary rule’s aim of preserving judicial integrity would not be offended when the officers believed their conduct complied with the law. Relatedly, the State urges this Court to follow the path taken in other states that have rejected the good faith exception established in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), but have nonetheless permitted introduction of evidence seized following the reliance of law enforcement officials on erroneous information in a database.
B.
Defendant says his ease involves a straightforward application of the Novembrino precedent. He was illegally arrested, and the evidence resulting from his arrest should be suppressed.
According to defendant, the outcome of this appeal should follow in line with the outcome in Moore, supra, in which the Appellate Division, relying on Novembrino, suppressed evidence seized fol *584 lowing the defendant’s arrest based on a vacated warrant that remained active in police records due to an administrative error. 260 N.J.Super. at 16-17, 614 A.2d 1360. Defendant distinguishes Pitcher, supra, 379 N.J.Super. at 320, 878 A.2d 8, and Diloreto, supra, 180 N.J. at 277-78, 850 A.2d 1226. Defendant also emphasizes that the New Jersey Constitution provides greater protection for its citizens than the United States Constitution and, thus, any reliance on Herring and Evans is inapt.
Finally, defendant argues that deterring officer misconduct is not the only purpose behind the exclusionary rule. Instead, the rule is designed also to vindicate the individual’s right to privacy and to maintain judicial integrity. Thus, defendant submits that the Appellate Division’s decision should be affirmed.
C.
As amicus, the Attorney General supports the State’s position, providing further bases for concluding that defendant’s constitutional rights were not violated or, assuming a constitutional violation, that the exclusionary rule should not apply. However, the Attorney General adds that, to the extent that Evans cannot be reconciled with this Court’s holding in Novembrino, Novembrino should be reconsidered and overruled. According to the Attorney General, the concerns that influenced the Novembrino Court to reject the Leon good faith exception have not come to pass. Thus, review of that decision is warranted.
Amicus ACLU supports defendant’s position, submitting that an arrest without a warrant is constitutionally impermissible and that the exclusionary rule must apply to evidence seized as a result of that constitutional violation. The ACLU characterizes the State’s argument as an attempt to “carve out a good faith exception” in contravention of Novembrino. The ACLU points to the non-deterrent rationales for the exclusionary rule and contends that the State’s position conflicts with those rationales. In addition, the ACLU maintains that the deterrence rationale for the exclusionary rule would be furthered by suppression in this matter, *585 pointing to the infrequent occurrence of clerical errors in New Jersey as evidence of the efficacy of deterrence.
III.
Both the United States Constitution and the New Jersey Constitution guarantee the right to be free from unreasonable searches and seizures. U.S. Const, amend. IV; N.J. Const, art. I, It 7. In accordance with that guarantee, both constitutions require that arrest warrants be supported by probable cause and that warrantless arrests in public places be supported by the same. State v. Brown, 205 N.J. 133, 144, 14 A.3d 26 (2011) (citing State v. Basil, 202 N.J. 570, 584, 998 A.2d 472 (2010)). “[A] police officer has probable cause to arrest a suspect when the officer possesses ‘a well[-]grounded suspicion that a crime has been or is being committed.’ ” Basil, supra, 202 N.J. at 585, 998 A.2d 472 (quoting State v. Sullivan, 169 N.J. 204, 211, 777 A.2d 60 (2001)). That well-grounded suspicion should be based on the totality of the circumstances as viewed by “an objectively reasonable police officer.” Ibid, (citations and internal quotation marks omitted).
The consequence for a violation of those constitutional principles is generally the exclusionary rule, Handy, supra, 206 N.J. at 45, 18 A.3d 179 which prohibits evidence obtained as a result of such violative conduct from being “use[d] in the prosecution’s case in chief,” Leon, supra, 468 U.S. at 900, 104 S.Ct. at 3409, 82 L.Ed.2d at 684. While the United States Supreme Court has acknowledged a good faith exception to that rule in certain circumstances, see, e.g., id. at 926,104 S.Ct. at 3422, 82 L.Ed.2d at 700-01, this Court has declined to do so, see, e.g., Novembrino, supra, 105 N.J. at 157-58, 519 A.2d 820. That is the relevant point of divergence between state and federal law in this matter.
A.
In Leon, supra, the United States Supreme Court declined to apply the exclusionary rule to evidence seized by officers relying *586 in good faith on a search warrant issued by a magistrate judge even though that warrant was later determined “to be unsupported by probable cause.” 468 U.S. at 900, 926, 104 S.Ct. at 3409, 3422, 82 L.Ed.2d at 684, 700-01. In so doing, the Leon Court noted that the exclusionary rule was “ ‘a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.’” Id. at 906, 104 S.Ct. at 3412, 82 L.Ed.2d at 687-88 (quoting United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561, 571 (1974)). After reviewing the objectives of the exclusionary rule, the Court concluded that “it e[ould ]not be expected, and should not be applied, to deter objectively reasonable law enforcement activity.” Id. at 906-09, 919, 104 S.Ct. at 3412-13, 3418, 82 L.Ed.2d at 688-89, 696. Thus, weighing the costs and benefits of exclusion of the evidence at issue, the Court determined that suppression was inappropriate. Id. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698. Thus sprang into being the “good faith exception” to the exclusionary rule.
Since Leon, the Supreme Court has expanded the good faith exception to include situations similar to that presently before this Court. In Evans, supra, the Supreme Court addressed “whether evidence seized in violation of the Fourth Amendment by an officer who acted in reliance on a police record indicating the existence of an outstanding arrest warrant — a record that is later determined to be erroneous — must be suppressed by virtue of the exclusionary rule.” 514 U.S. at 3-4, 115 S.Ct. at 1187, 131 L.Ed.2d at 39. In that case, the warrant for the defendant’s arrest had been quashed seventeen days prior to his arrest; however, for an undetermined reason, the warrant remained in police computer records. Id. at 4-5, 115 S.Ct. at 1188, 131 L.Ed.2d at 40-41. The State conceded that the defendant’s arrest violated his Fourth Amendment rights. Id. at 6 n. 1, 115 S.Ct. at 1189 n. 1, 131 L.Ed.2d at 41 n. 1. Despite that constitutional violation, the Court found that the “[ajpplication of the Leon framework supported] a categorical exception to the exclusionary rule for clerical errors of court employees.” Id. at 16, 115 S.Ct. at 1194, 131 L.Ed.2d at 47.
*587 In Herring, supra, the Supreme Court answered the “unresolved” question in Evans: “whether the evidence should be suppressed if police personnel [rather than judicial clerks] were responsible for the error.” 555 U.S. at 142-43, 129 S.Ct. at 701, 172 L.Ed.2d at 505-06 (internal quotation marks omitted). The defendant in Herring drove to the sheriffs department to retrieve items from his impounded truck and was recognized by one of the police investigators. See id. at 137, 129 S.Ct. at 698, 172 L.Ed.2d at 502. Upon inquiry, the investigator was informed that an active arrest warrant existed for the defendant. Ibid. The officer arrested the defendant and conducted a search incident to that arrest that revealed narcotics and a weapon. Ibid. It was later discovered that the warrant had been recalled five months earlier, but the recall had not been updated in the relevant database. Id. at 138, 129 S.Ct. at 698, 172 L.Ed.2d at 502.
Importantly, like in Evans, the Court accepted the parties’ assumption that a Fourth Amendment violation occurred and restricted the analysis to whether the exclusionary rule should apply. Id. at 139, 129 S.Ct. at 699, 172 L.Ed.2d at 503. The Court again relied on the Leon framework and maintained that “the benefits of deterrence must outweigh the costs” of applying the exclusionary rule. Id. at 141,129 S.Ct. at 700, 172 L.Ed.2d at 505. The Court concluded that “when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not ‘pay its way.’” Id. at 147-48, 129 S.Ct. at 704, 172 L.Ed.2d at 509 (quoting Leon, supra, 468 U.S. at 907 n. 6, 104 S.Ct. at 3412 n. 6, 82 L.Ed.2d at 688 n. 6).
B.
In Novembrino, supra, this Court relied on Article I, Paragraph 7, of the New Jersey Constitution in rejecting the Leon Court’s good faith exception. 105 N.J. at 157-59, 519 A.2d 820. Thus, the Court interpreted the New Jersey Constitution to provide broader protection than the Fourth Amendment. See id. at 145, 157-59, *588 519 A.2d 820. In its decision, the Court expressed concern that “the good-faith exception w[ould] ultimately reduce respect for and compliance with the probable-cause standard.” Id. at 154, 519 A.2d 820. The Court also characterized the exclusionary rule as “an integral element of our state-constitutional guarantee,” noting that “[i]ts function is not merely to deter police misconduct[ ] [but] ... also [to] serve[ ] as the indispensable mechanism for vindicating the constitutional right to be free from unreasonable searches.” Id. at 157, 519 A.2d 820. This Court has not retreated from its rejection of a good faith exception. State v. Adkins, 221 N.J. 300, 314, 113 A.3d 734 (2015) (‘Post-Novembrino, our Court’s adherence to its holding has remained steadfast----”).
In Moore, supra, the Appellate Division considered whether suppression was appropriate for evidence seized following an arrest based on a warrant that “had been judicially marked ‘vacated’ 27 days” earlier but remained outstanding in the local police log book. 260 N.J.Super. at 14, 614 A.2d 1360. The panel noted that while the parties disputed who was at fault for the failure to update the record, there was “no dispute that the arresting officer acted in good faith in executing what he thought was a valid warrant.” Id. at 15, 614 A.2d 1360. However, “[t]he inescapable consequence, after the finger-pointing [wa]s over, [wa]s that defendant was arrested illegally.” Id. at 16, 614 A.2d 1360. Therefore, the Appellate Division concluded that “the fruits of such an unlawful arrest [we]re not available to the State for [the defendant’s] prosecution even though the particular arresting officer acted in good faith and without culpability.” Ibid. The panel rejected the State’s argument that “th[e] mistaken arrest situation [i]s different from the issuance of a bad search warrant in Novembrino,” finding “no justifiable distinction between a judicial error on the existence of probable cause” and the administrative errors committed in that case. Id. at 17, 614 A.2d 1360. In fact, the panel denoted the State’s argument “no more than a plea for a ‘good faith’ exception to the exclusionary rule” that the Court had rejected in Novembrino. Id. at 16, 614 A.2d 1360.
*589 By contrast, in Diloreto, supra, this Court found no constitutional violation, and thus did not apply the exclusionary rule, in circumstances in which officers relied, in part, on misinformation from the National Crime Information Center (NCIC) database in questioning, detaining, and conducting a pat-down search of the defendant. 180 N.J. at 271-74, 282, 850 A.2d 1226. More specifically, the Court concluded that, given an NCIC alert that the defendant was an “endangered” missing person along with other factors, the community caretaker doctrine justified the police conduct. Id. at 277-78, 850 A.2d 1226. In discussing the role of the officer’s reliance on the erroneous NCIC alert in its decision, the Court acknowledged that it had rejected the good faith exception in Novembrino; however, because “the error in failing to remove defendant’s name from the NCIC database occurred not within the framework of an intended prosecution, but under the protective rubric of the community caretaker doctrine,” Novembrino was inapplicable. Id. at 280, 850 A.2d 1226.
In Pitcher, supra, the Appellate Division similarly dealt with a database error; this time, misinformation in the motor vehicle database reflected that the defendant’s license was suspended. 379 N.J.Super. at 312, 878 A.2d 8. The defendant was stopped based on that misinformation, and the officer observed that the defendant was intoxicated. Id. at 312-13, 878 A.2d 8. In moving to suppress the evidence of intoxication, the defendant argued that the stop was unconstitutional because it was based on an erroneous license suspension. Id. at 313, 878 A.2d 8. The panel analogized the license suspension information to information received from an unreliable informant, noting that “[a] license suspension, unlike a warrant or report of reasonable suspicion, is not a determination about the justification for a stop or arrest. The license suspension is simply factual information that leads to a suspicion of a violation of the motor vehicle laws, i.e., one articulable fact.” Id. at 318, 878 A.2d 8. Thus, the panel found that the stop was constitutional and that the good faith exception rejected in Novembrino was irrelevant. Id. at 313, 878 A.2d 8.
*590 Most recently, in Handy, supra, this Court addressed a scenario in which officers arrested the defendant based on receipt of erroneous information from the dispatcher that the defendant had an outstanding warrant. 206 N.J. at 42-43, 18 A.3d 179. Incident to that arrest, the defendant was found to be in possession of drugs. Id. at 42, 18 A.3d 179. The police dispatcher then informed the officer that there was a birth-date discrepancy between that provided by the defendant and that listed in the warrant. Ibid. Upon return to headquarters, the officer learned that the warrant on which he had arrested the defendant was for a different individual, with a similar, but somewhat differently spelled, name. Id. at 42-43, 18 A.3d 179. The defendant nevertheless was charged with possession of the drugs. Id. at 43, 18 A 3d 179. In assessing whether that evidence should be suppressed, this Court found that the “conduct by the dispatcher, an integral link in the law enforcement chain, was objectively unreasonable” and thus violative of the state and federal constitutions. Id. at 42,18 A.3d 179.
In rendering its decision, the Court discussed the Supreme Court decisions in Evans and Herring, and found them inapplicable. Id. at 48-50, 52-53, 18 A.3d 179. The Handy Court further highlighted that neither case “dispensed with the standard of ‘objective reasonableness’ that governs the execution of a warrant,” id. at 53, 18 A 3d 179 on which the Court’s decision was premised.
IV.
The arguments before the Court call into question the significance of law enforcement reliance on an ostensibly valid arrest warrant in assessing the constitutionality of an arrest as well as the application of the exclusionary rule.
Beginning with the constitutionality of defendant’s arrest, there is no dispute in this case that, at the moment of defendant’s arrest, no valid warrant was in effect. Defendant’s arrest was based solely on the existence of the allegedly outstanding arrest warrant *591 that, in fact, had been vacated eighteen months earlier but had not been removed from the computer database accessed by the dispatcher. No other probable cause provides a leg on which the State can stand to assert a lawful arrest. “The inescapable consequence ... is that defendant was arrested illegally.” Moore, supra, 260 N.J.Super, at 16, 614 A.2d 1360.[1] The officer’s belief, even in good faith, that a valid warrant for defendant’s arrest was outstanding cannot render an arrest made absent a valid warrant or probable cause constitutionally compliant. See Brown, supra, 205 N.J. at 144, 14 A.3d 26.
To the extent that the State relies for its position on Diloreto and Pitcher, those decisions are inapposite, as the Appellate Division properly concluded.
In Diloreto, supra, the Court considered the officers’ reliance on the misinformation contained in the NCIC database as one factor supporting their conduct under the community caretaker doctrine. 180 N.J. at 282, 850 A.2d 1226. Thus, the Court applied an exception to the general prohibition against warrantless searches. Id. at 275, 282, 850 A.2d 1226. That decision cannot, and should not, be read to support the proposition that objective and reasonable reliance on information in the NCIC database, even if later determined to be erroneous, can support probable cause for an arrest. In fact, the Court specifically highlighted the limited nature of its holding. Id. at 282, 850 A.2d 1226 (“The State should not construe our holding as approving wide application of the community caretaker doctrine in this setting.”).
In Pitcher, supra, the Appellate Division found that information in a motor vehicle database, even if later found to be erroneous, could be “one articulable fact” that can “lead[ ] to a suspicion of a violation of the motor vehicle laws” to substantiate a motor vehicle stop. 379 N.J.Super. at 318, 878 A.2d 8. The panel did not opine *592 that reasonable reliance on that information could support probable cause to arrest.[2] See ibid. The same rationale applies to the Appellate Division decision in Green, supra, in which officers were in possession of a valid warrant for a person matching the defendant’s description and were executing that warrant at the address listed for that person when the defendant fled and was arrested. 318 N.J.Super. at 349, 723 A.2d 1012. In allowing admission of the evidence seized following defendant’s arrest, the panel relied on law enforcement’s objective and reasonable execution of the valid warrant, id. at 353-54, 723 A.2d 1012; the panel did not suggest that an invalid warrant, unsupported by probable cause, could supply the basis for an objective and reasonable belief that there is probable cause to arrest. See ibid.
Our decision does not alter the standard of objective reasonableness applicable to the assessment of probable cause to arrest. See Basil, supra, 202 N.J. at 585, 998 A.2d 472; cf. Handy, supra, 206 N.J. at 42, 18 A.3d 179 (finding conduct of police dispatcher, “an integral link in the law enforcement chain, was objectively unreasonable and violat[ive of]” the New Jersey and United States Constitutions). We conclude only that an invalid warrant cannot provide the basis for an objective and reasonable belief that probable cause to arrest exists; an arrest made under that standard is constitutionally defective. To hold otherwise would be akin to adopting the good faith exception to the exclusionary rule that has been explicitly, and consistently, rejected by this Court, most recently in Adkins, supra, 221 N.J. at 314, 113 A.3d 734. See also Moore, supra, 260 N.J.Super. at 16, 614 A.2d 1360 (labeling State’s argument “no more than a plea for a ‘good faith’ exception to the exclusionary rule”). We decline to *593 carve out an exception to that explicit rejection in the manner requested by the State or the Attorney General.
In respect of the exclusionary rule, defendants are afforded greater rights under the New Jersey Constitution than under the United States Constitution. See Novembrino, supra, 105 N.J. at 144-45, 519 A.2d 820. In Novembrino, this Court relied on the New Jersey Constitution in rejecting the Leon good faith exception. Id. at 159, 519 A.2d 820. The United States Supreme Court decisions in Evans and Herring are premised on the Court’s decision in Leon. Thus, to follow their reasoning, as the State and the Attorney General advocate, would be a retrenchment of our decision in Novembrino. We can see it no other way.
The Court in Novembrino based its decision on the conclusion that the exclusionary rule functioned not only as a deterrent for police misconduct but also as “the indispensable mechanism for vindicating the constitutional right to be free from unreasonable searches.” Id. at 157, 519 A.2d 820. This case involves an unconstitutional seizure of a man who had secured relief eighteen months earlier from his outstanding arrest warrant. His constitutional right to be free of that unreasonable seizure trumps the subjective good faith reliance by the police on the unpurged, but in fact vacated, arrest warrant. Novembrino’s important purpose to secure vindication of constitutional rights cannot be ignored. We decline to do so here. Moreover, the inevitable result will cause people to be more careful — -a laudatory effect on all state actors.
V.
For the foregoing reasons, we affirm the judgment of the Appellate Division affirming the trial court’s suppression order.

 Notably, in Evans and Herring, a constitutional violation was conceded or assumed. Herring, supra, 555 U.S. at 139, 129 S.Ct. at 699, 172 L.Ed.2d at 503; Evans, supra, 514 U.S. at 6 n. 1, 115 S.Ct. at 1189 n. 1, 131 L.Ed.2d at 41 n. 1.

 The State submitted a supplemental letter brief to the Court bringing to its attention the United States Supreme Court's decision in Heien v. North Carolina, —U.S.—, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014). We note that Heien, too, dealt with law enforcement's objective reasonableness in effectuating a stop; it did not find justification for an arrest absent probable cause or a valid warrant. See id. at—, 135 S.Ct. at 539, 190 L.Ed.2d at 485.