Justice SOLOMON,
dissenting.
The Court held in State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987), only that, in recognition of the exclusionary rule’s secondary function as a mechanism for the enforcement of citizens’ *594 constitutional rights, where law enforcement is involved in the error giving rise to the unlawful search or seizure, the police officer’s good faith conduct is not a basis to avoid suppression. Reading Novembrino to require suppression for a purely judicial error, as the concurring opinion does, ignores the significant costs of suppressing competent evidence and renders the deterrent function of the exclusionary rule insignificant. In my view, the concurring opinion’s conclusion cannot be reconciled with our subsequent decisions. See, e.g., State v. Shaw, 213 N.J. 398, 414, 64 A.3d 499 (2012) (holding that, in light of “the high price exacted by suppressing evidence,” suppression is unwarranted where law enforcement obtains “evidence that is sufficiently independent of the illegal conduct”); State v. Williams, 192 N.J. 1, 14-15, 926 A.2d 340 (2007) (same); State v. Badessa, 185 N.J. 303, 310-11, 885 A.2d 430 (2005).
By holding that the officer’s objectively reasonable conduct is irrelevant in a case in which no law enforcement personnel are remotely responsible for the impropriety of the arrest, the concurring opinion not only fails to give effect to “[t]he ‘prime purpose’ of the [exclusionary] rule,” State v. Smith, 212 N.J. 365, 388, 54 A.3d 772 (2012) (quoting State v. Evers, 175 N.J. 355, 376, 815 A.2d 432 (2003)), cert. denied, — U.S. —, 133 S.Ct. 1504, 185 L.Ed.2d 558 (2013), it also misreads our jurisprudence since Novembrino rejected the federal good-faith exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). As recently as four years ago, this Court considered whether law enforcement personnel’s conduct was objectively reasonable in a situation where a police officer, through carelessness on the part of the police dispatcher, arrested defendant pursuant to a validly issued warrant against another individual. State v. Handy, 206 N.J. 39, 41-42, 18 A.3d 179 (2011). The Appellate Division applied a similar analysis in State v. Green, 318 N.J.Super. 346, 723 A.2d 1012 (App.Div.1999), where the officer arrested the defendant based on the mistaken belief that the defendant was the man referenced on the arrest warrant. Id. at 348-49, 723 A.2d 1012.
*595 The concurring opinion finds these cases inapposite because the warrants upon which those arrests were based were valid. However, while the arrest warrants in those cases were supported by probable cause, the arrests were not. The fact remains that, as here, the defendants in those cases were arrested unlawfully; there is no principled basis to distinguish between the unlawful arrests in Handy and Green, where the defendants were mistakenly arrested pursuant to valid arrest warrants issued against other individuals, and defendant’s unlawful arrest pursuant to a once-validly issued arrest warrant that was, unbeknownst to law enforcement, subsequently vacated.
Moreover, because municipal court staff were entirely responsible for the error in this case, application of the exclusionary rule here improperly conflates law enforcement with the judiciary. The judiciary and law enforcement are separate and independent components of our criminal justice system, serving entirely different functions. Law enforcement, for its part, investigates criminal activity and secures incriminating evidence for use in obtaining convictions. The judiciary, in turn, weighs the evidence presented, applies the relevant law to that evidence, and determines if there is sufficient probable cause to support a warrant. The judiciary also functions as a check against executive power exercised by law enforcement. “Judges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions.” Leon, supra, 468 U.S. at 917, 104 S.Ct. at 3417, 82 L.Ed.2d at 695. Thus, absent some indicia of law enforcement involvement, suppressing evidence based on a purely judicial oversight improperly suggests that the judiciary is in collusion with law enforcement to obtain convictions, and therefore may be deterred from obtaining such evidence through unlawful means.
I.
There is no dispute regarding the facts relevant to our analysis. Patrolman Steven Love arrested defendant in October 2011 pursu *596 ant to an arrest warrant, which was later determined to have been vacated in 2010. However, due to a clerical oversight by a municipal court administrator, the arrest warrant was not listed as vacated in the automated criminal system (ACS)' — a statewide database that tracks, among other things, warrant history — for each criminal complaint. It is undisputed that this process in no way involves law enforcement personnel.
Following defendant’s arrest, Officer Love discovered illegal narcotics and $2,317 in cash on defendant — evidence which formed the basis of the charges against him. On rehearing, the motion court granted defendant’s suppression motion based on testimony from the Asbury Park Municipal Court administrator, indicating that defendant’s warrant had been vacated prior to his arrest and that defendant’s arrest was therefore unlawful. Relying on Novembrino, the Appellate Division affirmed, holding that regardless of who was responsible for the clerical error, “New Jersey jurisprudence does not permit the State to use the fruits of an illegal arrest against a defendant even if the police acted reasonably.”
II.
As the concurring opinion notes, it is undisputed that the arrest warrant upon which defendant’s arrest was based was invalid, notwithstanding Officer Love’s reasonable understanding to the contrary. Therefore, the disagreement here does not turn on whether Officer Love had probable cause to arrest defendant or whether an exception to the warrant requirement applied, but on whether the appropriate remedy for the error leading to defendant’s arrest is suppression.
The appropriate remedy for a police violation of a citizen’s right to be free from unreasonable searches and seizures has long been the topic of debate. See Novembrino, supra, 105 N.J. at 100, 519 A.2d 820 (“ ‘The debate within the Court on the exclusionary rule has always been a warm one.’ ” (quoting United States v. Janis, 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046, 1056 (1976)); see also Leon, supra, 468 U.S. at 907, 104 S.Ct. at 3412, 82 *597 L.Ed.2d at 688 (“The substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights have long been a source of concern.”)). In light of the dispute before this Court, a brief history of the exclusionary rule is instructive here.
A.
The development and history of the exclusionary rule illustrates its core purpose: deterrence of future unlawful police conduct. The United States Supreme Court first applied the exclusionary rule in a criminal case in Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652, 657-58 (1914). In doing so, the Court observed:
The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.
[Id. at 392, 34 S.Ct. at 344, 58 L.Ed. at 655.]
Thirty-five years later, the Court in Wolf v. Colorado, 338 U.S. 25, 33, 69 S.Ct. 1359, 1364, 93 L.Ed. 1782, 1788 (1949), declined the invitation to apply the exclusionary rule to the States via the Due Process Clause of the Fourteenth Amendment. The Court, noting other remedies available to citizens for disruption caused by unlawful police intrusion, explained that it could not “brush aside the experience of States which deem the incidence of such conduct by the police too slight to call for a deterrent remedy not by way of disciplinary measures but by overriding the relevant rules of evidence.” Id. at 31-32, 69 S.Ct. at 1363-64, 93 L.Ed. at 1787-88.
In the seminal ease of Mapp v. Ohio, 367 U.S. 643, 660, 81 S.Ct. 1684, 1694, 6 L.Ed.2d 1081, 1093 (1961), the Court reversed course, holding the exclusionary rule applicable to the States via the Due Process Clause of the Fourteenth Amendment. In doing so, the Court noted that it had consistently held the exclusionary rule is *598 “a clear, specific, and constitutionally required' — even if judicially implied — deterrent safeguard without insistence upon which the Fourth Amendment would have been reduced to ‘a form of words.’ ” Id. at 648, 81 S.Ct. at 1688, 6 L.Ed.2d at 1086 (quoting Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 321 (1920)).
The Mapp Court further noted its recent “recogni[tion] that the purpose of the exclusionary rule ‘is to deter — to compel respect for the constitutional guaranty in the only effectively available way— by removing the incentive to disregard it.’ ” Id. at 656, 81 S.Ct. at 1692, 6 L.Ed.2d at 1090 (quoting Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669, 1677 (1960) (further stating “[t]he [exclusionary] rule is calculated to prevent, not to repair,” constitutional violations)). In disapproving of “the double standard” resulting from finding the exclusionary rule applicable to federal agents but not to state law enforcement, the Court explained:
In nonexclusionary States, federal officers, being human, were by it invited to and did, as our cases indicate, step across the street to the State’s attorney with their unconstitutionally seized evidence. Prosecution on the basis of that evidence was then had in a state court in utter disregard of the enforceable Fourth Amendment. If the fruits of an unconstitutional search had been inadmissible in both state and federal courts, this inducement to evasion would have been sooner eliminated.
[Id. at 658, 81 S.Ct at 1693, 6 L.Ed.2d at 1091-92.]
Over the next twenty-three years, the United States Supreme Court decided a series of cases paring back the exclusionary rule where, in the Court’s view, the deterrent effect did not outweigh the truth-finding function of the criminal justice system. See, e.g., Alderman v. United States, 394 U.S. 165, 171-72, 89 S.Ct. 961, 965, 22 L.Ed.2d 176, 185-86 (1969) (holding only those whose Fourth Amendment rights have been violated have standing to invoke exclusionary rule); United States v. Calandra, 414 U.S. 338, 349-52, 94 S.Ct. 613, 620-22, 38 L.Ed.2d 561, 572-73 (1974) (rejecting application of exclusionary rule to evidence presented at grand jury proceedings because such application “would achieve a speculative and undoubtedly minimal advance in the deterrence of police misconduct at the expense of substantially impeding the role of *599 the grand jury”); United States v. Havens, 446 U.S. 620, 626, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559, 565 (1980) (holding exclusionary rule does not bar use of unlawfully seized evidence for impeachment purposes). Then, in what this Court described as “the most significant limitation of the exclusionary rule since its genesis in Weeks,” Novembrino, supra, 105 N.J. at 139, 519 A.2d 820, the Supreme Court in Leon, supra, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, adopted the good-faith exception to the exclusionary rule.
The Supreme Court in Leon, supra, applying “the balancing approach that has evolved during the years of experience with the rule,” determined that “reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate should be admissible in the prosecution’s case in chief.” 468 U.S. at 913, 104 S.Ct. at 3415, 82 L.Ed.2d at 692. In denying the suppression motion, the District Court in that case found the affidavit in support of the search warrant on which the search of the defendant’s home was based “insufficient to establish probable cause,” but determined that there was no question the officer who procured the warrant “had acted in good faith.” Id. at 903-04 & n. 4, 104 S.Ct. at 3410 & n. 4, 82 L.Ed.2d at 685-86 & n. 4.
Turning to the question of the appropriate remedy, the Court considered “the tension between the sometimes competing goals of, on the one hand, deterring official misconduct and removing inducements to unreasonable invasions of privacy and, on the other, establishing procedures under which criminal defendants are ‘acquitted or convicted on the basis of all the evidence which exposes the truth.’ ” Id. at 900-01, 104 S.Ct. at 3409, 82 L.Ed.2d at 684 (quoting Alderman, supra, 394 U.S. at 175, 89 S.Ct. at 967, 22 L.Ed.2d at 187). The Court determined that, on balance, “the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.” Id. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698. *600 Thus, while suppression remains the appropriate remedy where “the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause,” id. at 926, 104 S.Ct. at 3422, 82 L.Ed.2d at 701, suppression is not warranted where “an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,” id. at 920, 104 S.Ct. at 3419, 82 L.Ed.2d at 697.
The Supreme Court then provided four distinct rationales for finding a good-faith exception to the exclusionary rule. “First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.” Id. at 916, 104 S.Ct. at 3417, 82 L.Ed.2d at 694. Additionally, “there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.” Ibid. Third, the Court could “discern no basis ... for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.” Ibid. Finally, the Court reasoned that exclusion of evidence “ ‘[wjhere the official action was pursued in complete good faith ... loses much of its force.’ ” Id. at 919, 104 S.Ct. at 3418, 82 L.Ed.2d at 696 (citations omitted). Thus,
where the officer’s conduct is objectively reasonable, “excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.”
[Id. at 919-20, 104 S.Ct. at 3419, 82 L.Ed.2d at 697 (citation omitted).]
Against this backdrop, we consider the application of the exclusionary rule in New Jersey.
B.
With some exception, in the fifty-four years since this Court first addressed the exclusionary rule in State v. Valentin, 36 N.J. 41, 174 A.2d 737 (1961), our courts have resisted the federal trend *601 towards erosion of the exclusionary rule. Most relevant to the matter before us, a majority of the Court in Novembrino, supra, 105 N.J. at 157-58, 519 A.2d 820, rejected the federal good faith exception established in Leon.
In Novembrino, a detective discovered evidence of drug trafficking following a search of the defendant’s workplace. Id. at 102-03, 519 A.2d 820. The detective conducted the search pursuant to a warrant issued by a judge, who had signed the warrant based on an affidavit prepared by the detective stating that the defendant was selling narcotics out of his gas station. Id. at 102-04, 519 A.2d 820. The trial court suppressed the evidence, finding the affidavit “failed to establish probable cause.” Id. at 103, 519 A.2d 820. In affirming suppression, the Appellate Division rejected the State’s contention that the good faith exception should be applied in this state, reasoning that the good faith exception “would undermine the constitutional requirement of probable cause.” Id. at 105, 519 A.2d 820. This Court granted the State’s petition for certification, determined that the detective’s affidavit failed to establish probable cause, and turned to the question of whether the good faith exception should apply in this State. Id. at 124-30, 519 A.2d 820.
In rejecting the good faith exception to the exclusionary rule, the Novembrino majority began by noting that the Court “has frequently resorted to our own State Constitution in order to afford our citizens broader protection of certain personal rights than that afforded by analogous or identical provisions of the federal Constitution.” Id. at 145, 519 A.2d 820. Finding academic criticism of Leon persuasive, the majority stated:
By eliminating any cost for noncompliance with the constitutional requirement of probable cause, the good-faith exception assures us that the constitutional standard will be diluted.
Our view that the good-faith exception will ultimately reduce respect for and compliance with the probable-cause standard that we have steadfastly enforced persuades us that there is a strong state interest that would be disserved by adopting the Leon rule.
[7d at 152-54, 519 A.2d 820.]
*602 The majority agreed with the dissenting Justice’s observation “that the public will view the good-faith exception to the exclusionary rule as a sensible accommodation between protecting an individual’s constitutional rights and punishing the guilty.” Id. at 156, 519 A.2d 820. Nevertheless, the majority determined that it could not countenance the “erosion of the probable-cause guarantee” enshrined in article I, paragraph 7 of our State Constitution, which it felt was likely to “be a corollary to the good-faith exception.” Id. at 159, 519 A.2d 820.
Recently, in the context of a police officer’s execution of an arrest warrant, this Court in Handy, supra, again considered the standard for suppression of evidence uncovered in the execution of a warrant. The Court affirmed the Appellate Division’s conclusion that, where the execution of a warrant is at issue, “the basic test under both” the federal and our state constitutions is: “was the conduct objectively reasonable in light of ‘the facts known to the law enforcement officer at the time of the search.’ ” 206 N.J. at 46-17, 18 A.3d 179 (quoting State v. Bruzzese, 94 N.J. 210, 221, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695-96 (1984)); accord Green, supra, 318 N.J.Super. at 354, 723 A.2d 1012. In doing so, we noted that, “under federal and state jurisprudence,” objective reasonableness is the appropriate standard because “ ‘room must be allowed for some mistakes by the police,’” provided of course “the police have behaved reasonably.” Handy, supra, 206 N.J. at 54, 18 A.3d 179 (quoting Illinois v. Rodriguez, 497 U.S. 177, 186, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148, 159-60 (1990)). Thus, we observed, the “standard of objective reasonableness is the polestar for our inquiry.” Id. at 47,18 A.3d 179.
Applying that standard, we affirmed the Appellate Division’s finding that a police dispatcher, who had erroneously informed the arresting officer that the defendant had an outstanding arrest warrant, acted unreasonably. Id. at 41-42, 18 A.3d 179. The officer had arrested Handy in response to the police dispatcher’s report that Handy had an outstanding arrest warrant, and, in a *603 search incident to that arrest, found illegal drugs. Id. at 42, 18 A.3d 179. The officer later learned that the warrant matched neither Handy’s name nor his birthdate, but nevertheless charged Handy with drug offenses. Id. at 42-13, 18 A.3d 179. We held that “our own constitution requires suppression” because the police dispatcher, “an integral link in the law enforcement chain,” had acted unreasonably “in failing to take further steps when she recognized that she did not have a match on the warrant check.” Id. at 42, 54, 18 A.3d 179.
Notably, the error in the execution of the arrest warrant was not due to inadequate or inaccurate information provided by the police officer. Hence, we looked to whether the police dispatcher’s conduct was objectively reasonable under the circumstances rather than whether the officer relied upon the warrant in good faith. The Appellate Division in Handy found its decision “fully consistent with [its] decision in State v. Moore, 260 N.J.Super. 12, 16, 614 A.2d 1360 (App.Div.1992),” a case in which the police, in good faith, arrested a defendant pursuant to an arrest warrant that was no longer valid, but which “the police never deleted ... from their computer databases.” State v. Handy, 412 N.J.Super. 492, 503, 991 A.2d 281 (App.Div.2010). Observing that police inaction led to the mistake giving rise to the unlawful arrest, the Appellate Division “relied on Professor LaFave’s assertion that ‘the police may not rely upon incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected.’ ” Ibid, (internal quotation marks omitted) (quoting Moore, supra, 260 N.J.Super. at 18, 614 A.2d 1360).
Similarly, in Green, supra, 318 N.J.Super. at 354, 723 A.2d 1012, the Appellate Division held that Novembrino does not govern cases “dealpng] with the validity of a police officer’s actions in executing a warrant.” The officers in that case mistook Green for another individual, Lovett, who was the person identified in a search warrant they were executing. Id. at 349, 723 A.2d 1012. During the course of the arrest, the officers discovered drugs belonging to Green. Ibid. The Appellate Division determined *604 that, because Green closely resembled Lovett, Green was standing outside of Lovett’s home when the officers arrived, and Green ran into Lovett’s house when the officers announced themselves, the officers’ belief that Green was Lovett was objectively reasonable. Id. at 352, 723 A.2d 1012. Observing the United States Supreme Court’s assertion that law enforcement agents need not always be correct but must “‘always be reasonable,’” the appellate panel concluded that, “if a police officer’s actions in executing a warrant are reasonable, there is no constitutional violation and thus no need to consider the availability of a good faith exception to the exclusionary rule.” Id. at 354, 723 A.2d 1012 (quoting Rodriguez, supra, 497 U.S. at 185, 110 S.Ct. at 2800, 111 L.Ed.2d at 159).
III.
Considered together, the above decisions demonstrate that, where law enforcement personnel share no responsibility for the error giving rise to the unlawful search or seizure, the question is not whether the police officer acted in good faith, but whether the officer’s conduct was objectively reasonable under the circumstances. The Court’s decision today, in finding suppression is required where the police bear no responsibility for the error resulting in the defendant’s unlawful arrest, extends Novembrino beyond its intended scope.
While Novembrino accords greater weight to the vindication function of the exclusionary rule than does the federal system, nothing in Novembrino suggests that the exclusionary rule is no longer intended to operate prophylactically against future unlawful misconduct by law enforcement. The Novembrino majority did not reject Leon’s well-settled assertion that “the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.” Leon, supra, 468 U.S. at 916, 104 S.Ct. at 3417, 82 L.Ed.2d at 694. Rather, Novembrino, supra, stated that the exclusionary rule’s function “is not merely to deter police conduct,” 105 N.J. at 157, 519 A.2d 820, indicating that *605 deterrence of future police misconduct remains a significant purpose of the exclusionary rule.
Indeed, since Novembrino, we have consistently affirmed our view that “[t]he ‘prime purpose’ of the [exclusionary] rule, if not the sole one, ‘is to deter future unlawful police conduct.’ ” E.g. Smith, supra, 212 N.J. at 388, 54 A.3d 772 (quoting Evers, supra, 175 N.J. at 376, 815 A.2d 432); see also Shaw, supra, 213 N.J. at 413, 64 A.3d 499 (noting one of two purposes of exclusionary rule “is to deter future unlawful police conduct” (citations and internal quotation marks omitted)); Williams, supra, 192 N.J. at 14, 926 A.2d 340 (“The overarching purpose of the rule is to deter the police from engaging in constitutional violations[.]”); Badessa, supra, 185 N.J. at 310, 885 A.2d 430 (same).
Nor have we rejected Leon’s premise that the exclusionary rule is “‘a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.’ ” Handy, supra, 206 N.J. at 45, 18 A.3d 179; see also Williams, supra, 192 N.J. at 14, 926 A.2d 340; Shaw, supra, 213 N.J. at 413, 64 A.3d 499. As we have recently observed, “[although the exclusionary rule ‘may vindicate the Fourth Amendment rights of a particular defendant, and more generally the privacy rights of all persons,’ it may also ‘depriv[e] the jury or judge of reliable evidence that may point the way to the truth.’ ” Shaw, supra, 213 N.J. at 414, 64 A.3d 499 (second alteration in original) (quoting Williams, supra, 192 N.J. at 14-15, 926 A.2d 340).
Because of the high price exacted by suppressing evidence, “the exclusionary rule is applied to those circumstances where its remedial objectives can best be achieved.” Thus, when law enforcement officials secure evidence that is sufficiently independent of the illegal conduct — evidence that is not tainted by the misdeed— then withholding evidence from the trier of fact is a cost that may not be justified by the exclusionary rule.
[Ibid, (citations omitted).]
Accordingly, the exclusionary rule applies where its purposes may best be served, mindful of the costs suppression of evidence imposes on the criminal justice system; it is not applied as a matter of constitutional right. In light of our steadfast adherence *606 to the United States Supreme Court’s balancing approach in applying the exclusionary rule, in which deterrence of future police misconduct plays a heavy role, Novembrino must be read only to preclude good-faith reliance by police officers on a warrant where law enforcement personnel contribute to a mistake that renders the warrant invalid. Reading Novembrino as the concurrence does here relegates the exclusionary rule’s deterrent function to a mere ancillary benefit. Novembrino does not go so far, and such a conclusion is contrary to our jurisprudence following Novembrino.
TV.
There is no basis to find that the exclusionary rule, applied to these facts, has any deterrent value whatsoever. Patricia Green, the Asbury Park Municipal Court administrator, offered unrebutted testimony that, in her twenty-seven-year tenure as administrator, as far as she was aware, this type of oversight had never occurred before. Green affirmed that “[i]t was our error,” and that “there’s no way the police would have known that” the warrant had been vacated. Therefore, suppression in this case divorces the exclusionary rule from its primary function: deterrence of future unlawful police conduct. Cf. Moore, supra, 260 N.J.Super, at 13-15, 614 A.2d 1360 (upholding suppression of evidence discovered following arrest based on vacated bench warrant, where police involvement in failure to vacate warrant was disputed). No reported decision goes so far, and it is error to do so here.
As the concurring opinion observes, Officer Love arrested defendant pursuant to a vacated warrant, “ ‘[t]he inescapable consequence’” of which ‘“is that defendant was arrested illegally.’” Ante at 588-89, 120 A.3d at 931 (quoting Moore, supra, 260 N.J.Super. at 16, 614 A.2d 1360). However, contrary to the concurrence’s position, there is no meaningful distinction between defendant’s arrest pursuant to a once validly issued warrant, and the arrests of the defendants in Handy and Green, who were *607 arrested pursuant to validly issued warrants for other individuals. At the end of the day, there was no probable cause supporting the arrests of any of these defendants. More importantly, “unlike Novembrino, th[ese] ease[s] do[ ] not involve any issue relating to the integrity of the warrant-issuing process.” Green, supra, 318 N.J.Super. at 353, 723 A.2d 1012. Because there is no evidence that any law enforcement personnel were responsible for failing to vacate defendant’s warrant, the standard is whether Officer Love’s actions were objectionably reasonable “in light of ‘the facts known to [him] at the time.’ ” Id. at 354, 723 A.2d 1012 (quoting Bruzzese, supra, 94 N.J. at 221, 463 A.2d 320).
“Suppressing evidence sends the strongest possible message that constitutional misconduct will not be tolerated and therefore is intended to encourage fidelity to the law.” Williams, supra, 192 N.J. at 14, 926 A.2d 340. Where, as here, law enforcement had no involvement in the fault giving rise to the unlawful arrest and “the officer’s actions in executing a warrant are reasonable, there is no constitutional violation and thus no need to consider the availability of a good faith exception to the exclusionary rule.” Green, supra, 318 N.J.Super. at 354, 723 A.2d 1012. Because Officer Love’s conduct was objectively reasonable, there was no constitutional misconduct here, and thus no need to send the costly message suppression offers.
I agree with my colleagues in the concurring opinion that, under Novembrino, a police officer’s objectively reasonable conduct is irrelevant where law enforcement personnel are responsible for the mistake giving rise to an unlawful arrest. However, neither Novembrino nor any decision since suggest that deterrence is no longer a relevant consideration when deciding whether suppression is the appropriate remedy. Nevertheless, the concurring opinion concludes that Novembrino requires application of the exclusionary rule — notwithstanding that the record is devoid of evidence of police misconduct, and that the exclusionary rule has no deterrent value in this case. It is from this conclusion that I dissent.
*608 For the foregoing reasons, I would reverse the judgment of the Appellate Division.
For affirmance — Chief Justice RABNER and Justices LaVECCHIA, and ALBIN — 3.
For dissent — Justices PATTERSON, FERNANDEZ-VTNA, SOLOMON — 3.
Not participating — Judge CUFF (temporarily assigned).