**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5706-14T3

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

S.S.,

    Defendant-Respondent.

_____

Argued December 9, 2015 – Decided March 14, 2016

Before Judges Alvarez and Manahan.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 09-12-2040.

John R. Mulkeen, Assistant Prosecutor, argued the cause for appellant (Esther Suarez, Hudson County Prosecutor, attorney; Mr. Mulkeen, on the brief).

Joseph J. Russo, Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Mr. Russo, of counsel and on the brief).

PER CURIAM

By leave granted, the State appeals a June 25, 2015 Law Division order suppressing recorded inculpatory statements. We now reverse.

Defendant's prior conviction on a charge of first-degree aggravated assault, N.J.S.A. 2C:14-2(a), and second-degree

endangering the welfare of a child, N.J.S.A. 2C:24-4(a),[1] was previously reversed on appeal. State v. S.S., No. A-2007-11 (App. Div. Aug. 4, 2014). The admission of defendant's videotaped confession was not challenged prior to the earlier trial or during that first appeal process.

Defendant's charges arose from his daughter's statements to a babysitter that her father placed his penis in her mouth. At the time of the events, she was four years old.

Hudson County Prosecutor's Special Victims Unit (SVU) Sergeant Kenneth Kolich and Detective Polly Hans video recorded defendant's statements. Defendant's interview was initially conducted by Hans alone. After being read his Miranda[2] rights, he signed a standard waiver form. Approximately forty-eight minutes into the interrogation, Hans was joined by Kolich.

To that point, Hans had primarily obtained background information, and had just begun asking defendant questions regarding the alleged assault. Defendant repeatedly denied that he had done anything wrong or anything similar to his daughter's description of the event. He also denied having any idea why

---

[1] Prior to trial, the State dismissed the charge of second-degree sexual assault by contact, N.J.S.A. 2C:14-2(b), and fourth-degree child abuse, N.J.S.A. 9:6-1 and 9:6-3. The State simultaneously amended the endangering count to conform to the remaining alleged acts of aggravated sexual assault.

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

his daughter would have made up the story. The denials were accompanied by lengthy silences in response to the officers' questioning. At one point, defendant asked to use the bathroom. Kolich responded by asking defendant to hold on for a "couple of minutes."

At another point, defendant's cell phone rang. Kolich took it from him before he could answer. Kolich turned, once he had the cell phone, and placed it behind him on a table to physically prevent defendant from reaching it.

Kolich asked a question implying that defendant was fighting his guilt, "It's your daughter. Look what you and your wife are doing to her. Is that how you want her to remember you? [Defendant], there's something inside you [sic] want to say, and you're fighting it. You're fighting it." Defendant responded, "No, that's all I got to say. That's it." The interrogation continued. Later, Kolich again asked defendant, "Why, with all the people in the world, would your daughter pick on you and say you did this if it wasn't true?" Defendant responded "I don't know. That's all I can say."

Soon thereafter, Kolich explained that he had other people that he needed to speak with and that defendant could either wait in a holding cell or wait with another detective.

After a break in the video, the interrogation resumed after a forty-nine minute interval. Hans recommenced interrogation,

3

> Okay. As you know, everything still stands. You're still under oath. You know, you're aware, you know, of your rights. Even though you left the room, we're still, you know continuing from where we left off.
>
> Before I start talking, is there anything – you know, we left you. We told you to think about things. Is there anything that you thought about? Anything you want to tell us?

To which, defendant responded, "No." Immediately thereafter, Kolich said, "Let's talk about Saturday afternoon." Moments later, defendant asked if Hans could leave the room so he could speak to Kolich alone. Defendant then spontaneously said that he had placed his penis in his then four-year-old daughter's mouth for approximately five seconds.

Prior to trial, defendant filed a motion to suppress his videotaped confession, alleging that his inculpatory statements were obtained after he invoked his right to remain silent. After the hearing and oral argument by counsel, the judge rendered her decision from the bench. She said that it was based on "only the factual circumstances that took place within the interview . . . ." The judge then continued:

> [A]pproximately [forty] minutes into the interview the sergeant entered the room and began to ask the defendant substantive questions related to the alleged crime itself.
>
> The defendant repeatedly denied the allegations, shook his head and made statements to the effect of denying the allegations until he began to make

inculpatory statements toward the end of the interrogation. At approximately one hour into the interview the sergeant asked [defendant], there's something inside you, you want to say and you're fighting it, to which the defendant responded, no. That's all I got to say. That's it. . . .

The sergeant proceeds to continue to ask the defendant questions. The defendant attempts to remain silent. The interview then paused for [forty-nine] minutes and when the interview resumed the defendant once again answered no when asked if there was anything that you want to tell us. The defendant was not re-Mirandized.

. . . .

[T]he defendant clearly indicated his intention to end the interrogation when he stated, no, that's all I got to say. That's it. The defendant's intention[s] were made more obvious in his subsequent decision to remain silent to the sergeant's questioning. Furthermore, the defendant indicated his unwillingness to resume the interrogation after the [forty-nine]-minute break when he answered no to the sergeant's question as to whether there was anything that you want to tell us.

Even if it were merely ambiguous to the interrogators what the defendant's intentions were, the onus was on the detectives to clarify those intentions. . . .

The defendant's right to cut off questioning was not respected here. . . .

. . . .

[A]ny statement made after the defendant stated, no, that's all I got to say, is to be suppressed because the

subsequent interrogation violates the defendant's constitutional right to silence.

[I]t is the statement of that's all I have to say that constitutes a clear invocation of his rights. The [c]ourt finds that the defendant's previous headshaking and responses prior to the statement were not . . . attempts to invoke his right to remain silent but rather answers and non-verbal responses or reactions to the questions asked.

. . . .

[T]he defendant's motion is granted . . . .

On appeal, the State raises the following point of error:

POINT I
THE TRIAL COURT ERRED IN CONCLUDING THAT DEFENDANT INVOKED HIS RIGHT TO REMAIN SILENT.
a.) The Appellate Division Can Perform a De Novo Review of Whether the Defendant Invoked His Right to Remain Silent.

We review orders granting motions to suppress evidence accepting the trial court's findings of fact that are supported by sufficient credible evidence in the record. State v. Gamble, 218 N.J. 412, 424 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)). In the usual case, we accept those findings because they "are substantially influenced by [an] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Id. at 424-25 (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We disturb a trial court's findings of fact only

when "so clearly mistaken 'that the interests of justice demand intervention and correction.'" Elders, supra, 192 N.J. at 244 (quoting Johnson, supra, 42 N.J. at 162). Our review of a trial court's legal conclusions is plenary. State v. Handy, 412 N.J. Super. 492, 498 (App. Div. 2010), aff'd, 206 N.J. 39 (2011) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

However, when "the trial court's factual findings are based only on its viewing of a recorded interrogation that is equally available to the appellate court . . . deference to the trial court's interpretation is not required." State v. Diaz-Bridges, 208 N.J. 544, 566 (2012).

In determining whether the State has met its burden to establish a knowing, intelligent, and voluntary waiver, we look to "the totality of the circumstances, including both the characteristics of the defendant and the nature of the interrogation." State v. Faucett, 439 N.J. Super. 241, 257 (App. Div.), certif. denied, 221 N.J. 492 (2015). It is well-established that once a suspect indicates "he wishes to remain silent, the interrogation must cease." Miranda, supra, 384 U.S. at 473-74, 86 S. Ct. at 1627-28, 16 L. Ed. 2d at 723. When confronted with more ambiguous indications, officers are expected to make further "inquir[ies] in order to clarify the suspect's intent." Diaz-Bridges, supra, 208 N.J. at 569. In

these cases, the fact-sensitive inquiry regarding the totality of the circumstances is of particular importance. Id. at 565.

In State v. Johnson, the Supreme Court indicated that a defendant who has "'nothing else to say,' or who '[does] not want to talk about [the crime]'" has invoked the right to remain silent. 120 N.J. 263, 281 (1990) (citation omitted) (alterations in original). Furthermore, silence itself may be sufficient to invoke the right. Id. at 281-82. Statements conveying an unwillingness to respond to any questions also may be sufficient to invoke the right to remain silent. Id. at 285. Once the right has been invoked, it must be scrupulously honored. Ibid. "Where the invocation of the right to remain silent is followed by no interruption in questioning, and where the interrogation continues as if nothing had happened, the right is not scrupulously honored." Id. at 282.

If considered exclusively from the written statement, at a minimum, defendant's words, in accordance with Johnson, warranted exploration by the officers. See also Diaz-Bridges, supra, 208 N.J. at 569. That defendant was denied the opportunity to use the restroom for a few minutes after his request also reads as coercive, in violation of the principles embodied in Miranda and its progeny to the effect that statements should be admitted only if voluntary. See Miranda, supra, 384 U.S. at 462, 86 S. Ct. at 1621, 16 L. Ed. 2d at 717

("But a confession obtained by compulsion must be excluded whatever may have been the character of the compulsion . . . .").

But defendant's words and silences, when witnessed on the videotape, did not require exploration by the officers, or that the questioning stop. Respectfully, we disagree with the trial judge's interpretation of defendant's responses.

The interview was conducted while defendant was seated in an upholstered chair, directly facing Hans, seated in a similar chair some three or four feet away. When Kolich entered the room, he seated himself on defendant's left side, close by in a wooden chair he turned towards defendant and away from a table. He was closer to defendant than Hans.

Defendant, who appeared composed, spoke in quiet tones. His demeanor, until he confessed, was tense but calm. It was not until the point on the tape when he confessed that he showed emotion or wept.

When defendant said "that's all I got to say[,]" "that's all I can say[,]" and the word "no[,]" it was in the context that he had no explanation for his daughter's detailed false claim against him. It was not an equivocal request that the interrogation cease. In the most literal sense, defendant was denying that he had anything more to say about his daughter's accusation, not that he wanted to stop talking to the officers.

During the interrogation, both Hans and Kolich repeatedly asked defendant if he and his wife had his daughter's best interests at heart, if he understood that she could be harmed if labeled a liar, and if he had any explanation for her statement. Their strategy was to repeatedly ask defendant if he could think of a reason this false accusation was made.

The first alleged invocation occurred when defendant said "No, that's all I got to say. That's it." That response came after Hans and Kolich said the following:

> Detective Hans: No, she didn't do nothing wrong.
>
> Sergeant Kolich: You're absolutely right. She didn't do anything wrong.
>
> Detective Hans: But –
>
> Sergeant Kolich: She told us the truth
>
> Detective Hans: But she's going to feel that way if she's being told that the truth is something she has to now keep a secret.
>
> Sergeant Kolich: It's your daughter. Look what you and your wife are doing to her. Is that how you want her to remember you? [Defendant], there's something inside you you <sic> want to say, and you're fighting it. You're fighting it[.]

It is clear from defendant's level unchanged tone when he responded that he meant he had no explanation for his daughter's conduct. He had said what he was going to say about the subject.

The next alleged invocation occurred as follows:

> Sergeant Kolich: We're just looking for the truth here, [defendant]. Why, with all the people in the world, would your daughter pick on you and say you did this if it wasn't true?
>
> [Defendant]: I don't know. That's all I can say.

When those words are heard on the videotape, it appears to us from defendant's even tone of voice that he means that he is at a loss for words to explain the reason his daughter would have accused him. It simply does not, in context or in tone, sound like an invocation of the right to silence.

Finally, the third alleged invocation occurred as follows:

> Detective Hans: Okay. As you know, everything still stands. You're still under oath. You know, you're aware, you know, of your rights. Even though you left the room, we're still, you know, continuing from where we left off. Before I start talking, is there anything – you know, we left you. We told you to think about things. Is there anything that you thought about? Anything you want to tell us?
>
> [Defendant]: No.

Again, from defendant's tone and in the context of the flow of the conversation, it seems clear that defendant was only denying culpability, not that he was expressing the desire to stop the questioning.

Clearly, the State bears the burden of proving: "beyond a reasonable doubt that the suspect's waiver was knowing, intelligent, and voluntary in light of all the circumstances." State v. Patton, 362 N.J. Super. 16, 42 (App. Div.) (quoting State v. Presha, 163 N.J. 304, 313 (2000)), certif. denied, 178 N.J. 35 (2003). From our independent review of the video, we are satisfied that the State has borne its burden of proving beyond a reasonable doubt that defendant's initial waiver was never revoked.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5706-14T3